

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| DEE ANNE PAGEL, | ) |
| | ) |
| Appellant, | ) WD78066 |
| | ) |
| v. | ) OPINION FILED: January 12, 2016 |
| | ) |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Johnson County, Missouri**
The Honorable Michael L. Wagner, Judge

Before Division Three:  Joseph M. Ellis, Presiding Judge, Karen King Mitchell, Judge
and Gary D. Witt, Judge

Appellant Dee Anne Pagel ("Pagel") was convicted by a Johnson County jury of second-degree murder, Section 565.021,[1] first-degree assault, Section 565.050, and two counts of armed criminal action, Section 571.015.  Pagel now appeals the motion court's denial of her Rule 29.15[2] motion for post-conviction relief ("Motion"), in which she alleged her trial counsel was ineffective because he advised her not to testify in her own

---

[1] All statutory citations are to RSMo 2000, as updated through the 2015 Cumulative Supplement, unless otherwise indicated.
[2] All rule references are to Missouri Supreme Court Rules (2015).

defense. Pagel raises six points on appeal all related to this general claim of ineffectiveness. We affirm.

## FACTUAL BAKGROUND[3]

On July 5, 2009, Pagel drove James Vitale ("Vitale") and Jason Booth ("Booth") to the residence of Darrell Scott White ("White") in Holden, Missouri. The pretext of the visit to White was that Vitale wanted to look at a building to rent located on White's property to open a motorcycle repair shop. The real reason Vitale and Booth went to White's property was to rob him of valuables (including gold bars) they believed were located in a safe on the property. The first time the group drove to White's house, White was not home. The group returned a second time and White answered the door. White escorted Vitale to view the building located on the other side of White's property while Booth remained in the yard and Pagel remained in her car.

After viewing the building and returning back to the front of White's home, Vitale pulled out a handgun and attempted to shoot White in the head. Vitale missed, and White ran down the driveway trying to escape. Vitale and Booth then entered White's home, and one of them shot and killed White's girlfriend, Lisa Smith. Meanwhile, Pagel drove her car down the driveway chasing after White. White ran in a zig-zag pattern down the driveway to keep from being run over, and Pagel zig-zagged behind him trying to strike him. White made it to a trailer and went inside to escape and call 911. Pagel then drove

---

[3] The facts are recited in a light most favorable to the verdict. *Ferguson v. State*, 325 S.W.3d 400, 404 n.2 (Mo. App. W.D. 2010).

back up the driveway to retrieve Vitale and Booth and drove away. Shortly thereafter, the three were stopped by police and arrested while fleeing White's property.

Pagel was tried on a theory of accomplice liability. The focus of the trial was whether Pagel knew there was a plan to rob White before she drove Vitale and Booth to White's residence. In her initial interrogation with police, Pagel denied that she had any knowledge of the plan to rob White. In two subsequent interrogations and in her written statement, Pagel admitted that she was aware of the plan to rob White and she knew that Vitale had a gun when they went to White's house. White testified that he believed Pagel had tried to run him over as he was fleeing down his driveway. Pagel did not testify in her defense. The defense presented the testimony of two witnesses, who testified that Pagel had only known Vitale for a very short period of time. The jury found Pagel guilty of murder in the second degree, assault in the first degree, and two counts of armed criminal action. This Court affirmed Pagel's convictions on direct appeal.[4]

Pagel filed a timely motion for post-conviction relief that was subsequently amended by appointed counsel. As relevant to her appeal, Pagel claimed her trial counsel was ineffective for advising her against testifying in her own defense. An evidentiary hearing was conducted at which Pagel's trial counsel and Pagel testified. The motion court issued findings of fact and conclusions of law denying Pagel's motion for post-conviction relief. Pagel now asserts six claims of error all related to counsel's advice for her not to testify.

---

[4] *State v. Pagel*, 382 S.W.3d 244 (Mo. App. W.D. 2012) (per curiam order).

3

## STANDARD OF REVIEW

This Court will affirm the judgment of the motion court unless its findings and conclusions are clearly erroneous. Rule 29.15(k). The motion court's judgment is clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made. The motion court's findings are presumed correct. Additionally, a movant bears the burden of proving the asserted "claims for relief by a preponderance of the evidence." Rule 29.15(f).

*Christian v. State*, 455 S.W.3d 523, 525-26 (Mo. App. W.D. 2015).

## ANALYSIS

### Points I, II, and III

Pagel's Points I, II, and III on appeal all relate to her claim of ineffective assistance of counsel premised on her assertion that her trial counsel was ineffective for advising her not to testify at trial in her own defense in that such advice was unreasonable and unsound trial strategy. Pagel argues that the motion court erred by: (Point I) failing to recognize that an unreasonable trial strategy can provide a basis for an ineffective assistance claim; (Point II) misunderstanding the claim; and (Point III) failing to find trial counsel's performance was unreasonable. As all of these claims are interrelated, they will therefore be addressed together.

In order to establish ineffective assistance of counsel to warrant post-conviction relief, the movant must satisfy the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Woods v. State*, 458 S.W.3d 352, 356 (Mo. App. W.D. 2014). First, the movant must show that counsel's performance was deficient by falling below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. If counsel's performance was deficient, the movant must then prove that she was prejudiced by

4

counsel's deficiency. *Id*. at 687. Prejudice occurs when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*. There is a strong presumption that counsel's conduct was reasonable and effective. *Id*. at 689. To overcome this presumption, the movant must point to specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of effective assistance. *Id*. at 690. Strategic choices made after a thorough investigation of the law and the facts are virtually unchallengeable. *Id*.

Pagel claims her trial counsel was ineffective for advising her not to testify at trial. The decision whether the defendant should testify at trial is often the most difficult decision for the defendant and counsel to make. *See State v. Powell*, 798 S.W.2d 709, 718 (Mo. banc 1990). "The decision to testify solely rests with the defendant, but the defendant is entitled to receive 'reasonably competent advice.'" *Rousan v. State*, 48 S.W.3d 576, 585 (Mo. banc 2001) (quoting *State v. Dees,* 916 S.W.2d 287, 301 (Mo. App. W.D. 1995)). "Without more, advice from counsel not to testify is not deemed ineffective assistance of counsel if it might be considered sound trial strategy." *Id*. (citing *Powell*, 798 S.W.3d at 718); *see also Morrison v. State*, 75 S.W.3d 893, 897 (Mo. App. S.D. 2002) ("In many cases, the decision to testify is an extremely difficult decision, and absent exceptional circumstances, advice of counsel on the decision is a matter of trial strategy and not grounds for post-conviction relief").

The facts regarding trial counsel's advice are not in dispute as both Pagel and trial counsel agreed as to the essential facts at the evidentiary hearing. Trial counsel testified

5

that he advised Pagel that it was her right to decide whether she wanted to testify just as much as it was her right to plead guilty or not guilty. Trial counsel told Pagel that there are multiple factors to consider when deciding whether to testify. Among the considerations identified by trial counsel was that Pagel, at the time of the crimes, was on probation for a previous drug-related felony and, if she testified, the jury would learn that information. Another issue identified by counsel was that Pagel was emotionally unstable at the time of trial and he feared that having her testify could be dangerous and detrimental to her defense. Trial counsel's advice to Pagel was that she should not testify. At the time he gave this advice, trial counsel had thoroughly investigated the case and was aware of Pagel's previous statements to police. According to trial counsel, he believed that the previous statements were both exculpatory and incriminatory. Trial counsel discussed with Pagel whether she would testify both before trial started and after the close of the State's evidence. Pagel ultimately decided she did not want to testify. At the evidentiary hearing, Pagel testified that she was told and understood that it was her decision whether to testify at trial. She heeded the advice of her trial counsel and decided not to testify. The motion court found that the facts above were established and concluded that "[r]easonable trial strategy, in this instance a mere recommendation, will not support an ineffective assistance of counsel claim." We agree.

Contrary to Pagel's argument in Point I, the motion court correctly stated the law. The motion court explicitly stated in its judgment that Pagel was entitled to "reasonably competent advice" regarding her decision whether to testify, citing *Rousan v. State*, 48 S.W.3d 576 (Mo. banc 2001). The motion court found that trial counsel's strategy in

6

recommending that Pagel not testify was a "reasonable trial strategy" and that, therefore, it cannot support a claim for ineffective assistance of counsel.  This is the correct state of the law.  *See Rousan*, 48 S.W.3d at 585 (Mo. banc 2001).  Pagel is correct that previously the motion court had stated "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy do not provide [a] [sic] basis for postconviction relief."  A review of the entire judgment, however, clearly shows that the court in fact found that a reasonable or sound trial strategy is not a basis for post-conviction relief.  This is how the court addressed and dispensed with Pagel's claim.

Further, contrary to Pagel's Point II on appeal, the motion court did not misconstrue Pagel's claim.  Pagel suggests that the motion court's inclusion in its judgment that it was Pagel's ultimate decision not to testify means the motion court misconstrued the law and ignored whether the advice of counsel was reasonable or a sound trial strategy.  The motion court explicitly found, however, that trial counsel was concerned about (1) informing the jury that Pagel at the time of the crimes was on probation for a drug-related felony and (2) Pagel's emotional instability at the time of trial and the possibility that she might cause damage to her defense by testifying.  The motion court found that "[r]easonable trial strategy, in this instance a mere recommendation, will not support an ineffective assistance of counsel claim."  The motion court did not misconstrue Pagel's claim and found that trial counsel's actions were within the broad discretion afforded the performance of trial counsel.

Continuing on to Point III, Pagel claims that the motion court's finding that counsel's strategy was a reasonable trial strategy was in error.  Pagel argues that the

7

primary issue at trial was whether she knew there was a plan to rob White before she drove Vitale and Booth to White's house. Granting that trial counsel was concerned with both the evidence of Pagel's probation coming in at trial and her emotional stability and ability to testify, Pagel argues that trial counsel's advice not to testify was nevertheless unreasonable. Essentially, Pagel argues that she had nothing to lose by testifying because it was the only way she would not have been found guilty, considering that her previous statements to police were admitted into evidence.

Before addressing Pagel's argument, the court notes that the inquiry into whether a strategic decision made by counsel is a "sound" trial strategy is necessarily limited. An appellate court must be deferential when scrutinizing trial counsel's performance to avoid the "distorting effects of hindsight." *See Morrison*, 75 S.W.3d at 895; *Strickland*, 466 U.S. at 689. Thus, we have said that strategic choices made by trial counsel after a thorough investigation of the law and facts are "virtually unchallengeable" and only extraordinary circumstances would merit relief. *Johnson v. State*, 388 S.W.3d 159, 163 (Mo. banc 2012); *Vaca v. State*, 314 S.W.3d 331, 335 (Mo. banc 2010); *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005) ("Where counsel has investigated possible strategies, courts should rarely second-guess counsel's actual choices").

Trial counsel testified at the evidentiary hearing that he agreed that the primary issue at trial would be whether Pagel drove Vitale and Booth knowing that they intended to rob White. After attempting and failing to get Pagel's statements to police suppressed, Pagel's primary defense was that she did not know a crime would be committed when she drove the vehicle to the scene of the crimes, as she had only met Vitale a week before,

8

and that she was essentially an unwitting pawn in this robbery attempt. Trial counsel believed that Pagel's statements to police that were admitted into evidence were partially inculpatory and partially exculpatory. Trial counsel also believed that having Pagel testify could be more damaging than helpful to her case due to evidence of prior criminal behavior that would come into evidence and because of Pagel's emotional instability.

We refuse to say that trial counsel's choice of strategy to recommend that Pagel not testify due to these two reasonable concerns was beyond the wide range of strategic and reasonable choices available to trial counsel. This is even more true here where trial counsel had over twenty years of criminal defense experience. Where difficult decisions about a defense must be made, in particular whether a defendant should testify in her own defense, attorneys should use their best professional judgement, explain the various factors to their client, give their own reasoned advice, and let the client make the final decision. This is precisely what happened here. Trial counsel's advice was well within the range of reasonable professional advice he could have given.

Points I, II, III are denied.

**Point IV, V, and VI**

In Point IV on appeal, Pagel claims the motion court erred when it found Pagel could not establish prejudice because her proposed testimony was not relevant to the issue of accomplice liability. In Point V on appeal, Pagel also claims the motion court erred when it found she could not establish prejudice with regard to her claim that if she had testified she may have been able to present mitigating evidence to receive a lesser sentence. Because we have found trial counsel's performance was not deficient, it is

unnecessary to proceed further and determine whether Pagel was prejudiced by any of her claims of ineffective assistance. *See Strickland*, 466 U.S. at 687-88 (movant must show both deficient performance and that she was prejudiced by the deficiency).

In Point VI on appeal, Pagel argues that, due to the cumulative alleged errors addressed above, meaningful appellate review is unavailable and, therefore, the case should be remanded. Having found the motion court did not err as alleged in Points I through V on appeal, Point VI is without merit.

Points IV, V, and VI are denied.

## CONCLUSION

The judgment of the motion court is affirmed.

_____
Gary D. Witt, Judge

All concur

10