Robert E. MADISON, II,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. SD 30965.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 25, 2011.

Mark A. Grothoff, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Robert E. Madison, II ("Movant") appeals the denial of his Rule 29.15 [1] motion to set aside his convictions for assault in the first degree and armed criminal action. *See* §§ 565.050 and 571.015.[2] We affirmed Movant's convictions and sentences on direct appeal in *State v. Madison*, 302 S.W.3d 763 (Mo.App. S.D.2010). In a single point relied on, Movant asserts the motion court clearly erred in denying relief because trial counsel failed to establish through cross-examination of a witness that Movant and the victim were "hanging out" together on the day before the shooting occurred and that they often took trips together. Movant contends that such testimony would have contradicted

**1.** Unless otherwise indicated, all rule references are to Missouri Court Rules (2011).

**2.** Unless otherwise indicated, all statutory references are to RSMo 2000.

Victim's trial testimony and would have thereby created a reasonable probability that the verdict would have been different. Because Movant failed to prove any such prejudice, we affirm.

## Background

We set forth here only the facts relevant to the resolution of Movant's claim. The charges against Movant arose from an exchange of gunfire between Movant and Marcus Robinson ("Victim") in August 2006 at Victim's home. During the gunfight, Victim was wounded and his wife was killed. *Id.* at 765. The bullets that killed Victim's wife were probably fired from Victim's gun. The jury also heard evidence that Victim received $106,500 in life insurance proceeds as a result of his wife's death. After deliberating, the jury convicted Movant of first-degree assault and armed criminal action for shooting Victim but acquitted him on all charges related to the death of Victim's wife. *Id.* at 765, 767.

At trial, Victim testified that he had known Movant since 1985 or 1986 and they had "hung out some." Victim stated that "at the time we was 'gettin' along, we was cool, rode around, talked every once in a while, and then it was like I stopped 'talkin' to him. We was 'gettin' along good though. I ain't never seen no problems."

A couple of days before the gunfight, Movant came to Victim's home and told him that "God sent me over here to kill you all, but you know what, you a good man, I ain't 'gonna' do all that[.]" Victim testified that the threat scared him, so he reported it to a police officer and decided to stay away from Movant. Victim specifically testified that he did not see Movant during the time period between Movant's threat and the gunfight.

Nathan Winfield testified for the State that he hung out with Movant two days before the shooting and gave Movant a ride to Victim's home. The following exchange then occurred during Winfield's cross-examination:

Q: You knew that [Movant] and [Victim] were friends?

A: Yes.

Q: You knew that [Victim] and [Movant] rode around together?

A: Yes.

Q: [Victim] and [Movant] would even come to your house together?

A: Yes.

Q: [Victim] and [Movant] might even take a trip together?

A: Yes.

[PROSECUTOR]: Objection, [u]nless he has personal information of that, it calls for speculation.

THE COURT: Sustained.

The prosecutor did not move to strike Winfield's answer or ask for any curative instruction.

After we issued our mandate affirming his convictions and sentences, Movant timely filed a *pro se* motion seeking post-conviction relief. Motion counsel was appointed and filed an amended motion that claimed trial counsel was ineffective for "unreasonably fail[ing] to establish through his cross-examination of [Winfield] at trial that [Winfield] had seen Movant and [Victim] hanging out together on the day before the shooting and that [Winfield] knew that Movant and [Victim] often took trips together." According to the amended motion, this evidence would have impeached Victim's testimony and thereby caused the jury to have a reasonable doubt about Movant's guilt.

The motion court held an evidentiary hearing on October 8, 2010. At the hearing, trial counsel testified that "[t]he theory of [the] defense was that [Victim]—that

[Movant] did not enter the trailer, [Victim] did this all on his own and collected sizable insurance money, and that the crime scene was basically staged." Trial counsel admitted that he received pre-trial discovery of police reports containing Winfield's statements, including the fact that Winfield had reported seeing Movant and Victim hanging out together the day before the shooting. Trial counsel did not recall the strategy he employed in cross-examining Winfield, but he was able to elicit from him that Victim and Movant had been friends. Trial counsel testified he had no reason for failing to go into more detail about the trips Winfield said Victim and Movant had taken together. Trial counsel did opine that such evidence would have been relatively minor in light of all the other information he had to attack Victim's credibility.

Winfield also testified at the evidentiary hearing. He reiterated his trial testimony that he had taken Movant to Victim's home two days before the shooting. He further testified that he observed Movant and Victim hanging out together the day before the shooting. Finally, Winfield stated that he knew that Movant and Victim had taken trips together to New York and Indiana. But Winfield admitted on cross-examination that he did not accompany Movant and Victim on these trips, had no personal "knowledge" about them. He had simply heard about them from Movant or Victim.

The motion court concluded that "[t]he testimony at the evidentiary hearing did not prove that further cross-examination of Winfield would have provided a viable defense for [M]ovant, or would have otherwise changed the outcome of the trial."

**Standard of Review**

We review the denial of a motion for post-conviction relief for clear error. Rule 29.15(k). We presume that the motion court's findings of fact and conclusions of law are correct and will find that clear error has occurred only if our review of the entire record leaves us with the "definite and firm impression that a mistake has been made." *Davidson v. State,* 308 S.W.3d 311, 316 (Mo.App. E.D.2010).

To successfully prove ineffective assistance of counsel, a movant must demonstrate that counsel's performance was deficient and that the defense was thereby prejudiced. *State v. Kinder,* 942 S.W.2d 313, 335 (Mo. banc 1996). Such prejudice occurs when there is a reasonable probability that, but for the errors or omissions of counsel, the trial result would have been different. *Id.* If the Movant fails to prove either deficient performance or prejudice, we need not consider the other. *Id.*

**Analysis**

Generally speaking, "trial counsel's failure to impeach a witness does not alone constitute ineffective assistance of counsel." *Davidson,* 308 S.W.3d at 317. "To establish ineffective assistance for counsel's failure to impeach a witness, the movant must show that the impeachment of the witness would have provided the defendant a viable defense or otherwise changed the outcome of the trial." *Id.* Impeachment testimony that does not negate an element of the offense does not provide a viable defense. *Id.*

Here, Movant claims trial counsel was deficient for failing to adduce two specific pieces of evidence during Winfield's cross-examination: 1) that Winfield saw Victim and Movant together the day before the shooting; and 2) that Victim and Movant took trips together. Neither of these pieces of information negates an element of the crimes for which Movant was tried and convicted. *See Id.* at 318 (counsel's failure to impeach a witness about the last

time that the witness spoke with the defendant after his arrest did not provide a viable defense to murder, assault, and armed criminal action); *State v. Mills*, 872 S.W.2d 875, 881 (Mo.App. S.D.1994) (evidence tending to show that a witness, contrary to his alleged trial testimony, was not afraid of the defendant did not provide a viable defense to forcible rape and sodomy); *but cf. Taylor v. State*, 198 S.W.3d 636, 642–43 (Mo.App. S.D.2006) (holding that the movant was entitled to an evidentiary hearing when his claim was that counsel failed to investigate an alibi witness who could have accounted for the movant's whereabouts at the precise time of the crime).

At the evidentiary hearing, Winfield testified that he saw Movant and Victim together on the day before the shooting. This testimony would not have provided Movant with a defense as it neither established Movant's whereabouts at the time of the shootout nor negated any of the elements of the crimes with which he had been charged. *See* §§ 565.050 and 571.015; *Mills*, 872 S.W.2d at 881; and *Davidson*, 308 S.W.3d at 318. Winfield's motion hearing testimony that he heard from Movant and Victim that they took trips together revealed that his "knowledge" of these trips was second-hand. More importantly, the jury knew from other testimony that Movant and Victim were friends.

As in *Mills* and *Davidson*, the testimony Movant claims should have been adduced, if believed by the jury, would merely have shown that Victim had lied about the last time he saw Movant before the shooting and that he was likely not as worried about Movant's threat as he had claimed. Neither of these facts would have negated any of the elements of the charged crimes. ■ We are not left with a definite and firm impression that the motion court

made a mistake in concluding that "[t]he testimony at the evidentiary hearing did not prove that further cross-examination of Winfield would have provided a viable defense for [M]ovant, or would have otherwise changed the outcome of the trial." As a result, there is no need to determine whether trial counsel's failure to elicit the testimony was deficient.

Movant's point is denied, and the motion court's order denying post-conviction relief is affirmed.

RAHMEYER and LYNCH, JJ., concur.